## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES D. EVANS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-1371** |
| | : | |
| **PRESIDENT OF THOMAS** | : | |
| **JEFFERSON UNIVERSITY** | : | |
| **HOSPITAL,** *et al.*, | : | |
| **Defendants.** | : | |

### MEMORANDUM

**SÁNCHEZ, C.J.**                                                  **JULY 25, 2022**

Plaintiff James D. Evans, a convicted prisoner who is currently a patient at Eagleville Hospital, has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, alleging discrimination, violations of the Americans with Disabilities Act and the Rehabilitation Act of 1993, and related state law claims.  ("Compl.") (ECF No. 2).  Evans has also filed a Motion for Leave to Proceed *in Forma Pauperis* and an inmate account statement, a Motion for Extension of Time to File Certificate of Merit, and a "Motion for Relief."[1]  (ECF Nos. 1, 3, 4, 6.)   For the following reasons, the Court will grant Evans leave to proceed *in forma pauperis*, dismiss his federal claims with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and dismiss his state law claims without prejudice for lack of subject matter jurisdiction.  Evans's motion for extension of time and motion for relief will be denied as moot.

---

[1] The "Motion for Relief" is best read as a request for a status update, which is rendered moot by the filing of this Memorandum.

1

## I.    FACTUAL ALLEGATIONS[2]

Evans names the following Defendants: (1) the President of Thomas Jefferson University Hospital ("TJUH"); (2) the Chief Health Care Administrator of TJUH; (3) TJUH; (4) Jefferson Health; (5) Dr. Jane Doe #1; (6) Nurse John Doe #1; (7) Nurse Jane Doe #2.  (Compl. at 3.)  All of the Defendants are sued in their individual and official capacities.[3]  (*Id.*)

Evans alleges that he is an African-American T12/L1 incomplete paraplegic with neurogenic bowel and bladder.  (*Id.* at 7.)  He alleges that he was admitted to TJUH on March 29, 2021 for treatment of a Stage 4 decubitis ulcer on his left buttock and osteomyelitis.  (*Id.* at 3-4.)  He alleges that while in the Emergency Room, he received 5 mL of dilaudid/hydromorphine for pain.  He was admitted to TJUH and moved to a patient room. Evans alleges that subsequent to his admission, Defendant Dr. Jane Doe #1 gave him only 1 mL of dilaudid/hydromorphine for his pain, which he alleges was inadequate.  (*Id.*)  He alleges that he told the Defendant doctor that the pain medication was inadequate, and she replied that she would not give him any more.  (*Id.*)

Evans alleges that on March 30, 2021, Defendant Nurse Jane Doe #2 administered a shot of a placebo, rather than dilaudid/hydromorphine.  (*Id.* at 5.)  Evans alleges that he told the Defendant nurse that the injections was not dilaudid/hydromorphine, and she replied that it was and left the room.  (*Id.*)  Evans claims that Defendant Nurse Jane Doe #2 administered the placebo every 3 hours for the remainder of the day.  (*Id.*)  Evans alleges that he called Defendant Chief Health Care Administrator of TJUH and left a message reporting administration of the

---

[2] The allegations set forth in this Memorandum are taken from Evans's Complaint.  The Court adopts the pagination assigned by the CM/ECF docketing system.

[3] Evans's claims against these private Defendants in their official capacities are without legal import and will not be considered.

placebo pain medication and Evans's "severe and excruciating pain," but did not receive a response.  Evans alleges he feared for his life from Defendant Nurse Jane Does #2.  (*Id.*)

Evans alleges that on March 21, 2021, he was visited by an "Afro-American Catholic Brother," and that Evans requested a Jesuit priest so that he could make confession.[4]  (*Id.* at 6.)  Evans also alleges that he told this individual that he was in severe pain and was not receiving adequate pain medication, and that Defendants Dr, Jane Doe #1, Nurse Jane Doe #2, TJUH, and Jefferson Health "did not like black people."  (*Id.*)  Evans alleges that he subsequently heard this individual speak to Defendants TJUH, Jefferson Health, and Dr. Jane Doe #1, after which Defendant Nurse Jane Doe #2 administered 5 2 mL ampules of dilaudid/hydromorphine.  (*Id.*)  Evans claims that for the remainder of Defendant Nurse Jane Doe #2's shift, he received the correct pain medication.  (*Id.*)

Evans alleges, however, that on April 1, 2021, Defendant Nurse Jane Doe #2 administered only placebos and placed full ampules of dilaudid/hydromorphine in the syringe collection bin, to be retrieved later.  (*Id.* at 6-7.)  Evans also alleges that Defendant Nurse John Doe #1 administered less than the prescribed dose of dilaudid/hydromorphine on April 1.  (*Id.* at 7.)  Evans alleges that this continued until his discharge on April 3, 2021.  (*Id.*)

Evans asserts that the President and Chief Health Care Administrators of TJUH were aware of the treatment he was receiving and should have intervened but did not, and asserts further that Defendants Dr. Jane Doe #1, Nurse John Doe #1, and Nurse Jane Doe #2 could not

---

[4] Evans alleges that when he was first admitted to his room, he requested that a Catholic priest come to his room so he could make confession.  (*Id.* at 4.)  He alleges that a "female Christian (Asian) minister came to his room and he asked for a Jesuit Catholic priest so he could make confession.  (*Id.* at 5.)  The minister allegedly told Evans she would see what she could do.  (*Id.*)  Evans's efforts to obtain a visit from his preferred spiritual advisor do not appear to be the basis for his claims.

have been allowed to treat a patient in that manner absent a policy and practice accepted by all

Defendants.  (*Id.*)  He alleges that all of the Defendants knew or should have known that he was

in severe and excruciating pain, but continued to deny him the proper medication.  (*Id.* at 7-8.)

He claims that the conduct of the Defendants constituted intentional and wanton cruel and

unusual punishment, and that the Defendants discriminated against him because of his disability

and his skin color.  (*Id.* at 8.)  He claims to have suffered fear, pain, mental and emotional

problems, and anxiety as a result of the Defendants' conduct.  (*Id.*)

Evans asserts claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act

("ADA"), the Rehabilitation Act of 1973 ("RA"), the Code of Federal Regulations,[5] and

Pennsylvania malpractice and tort laws.  (*Id.* at 2.)   As relief, he requests an award of

compensatory and punitive damages.  (*Id.* at 8.)

## II.    STANDARD OF REVIEW

Because Evans appears to be unable to pay the filing fee in this matter, the Court will

grant him leave to proceed *in forma pauperis*.[6]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii)

applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a

complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher*

*v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[5] Evans does not identify any particular section of the Code of Federal Regulations that he
believes provides a basis for a claim and the Court declines to speculate.  Evans's claims
pursuant to the Code of Federal Regulations will be dismissed.

[6] Because Evans is a prisoner, under the provisions of the Prison Litigation Reform Act, he must
still pay the full filing fee in installments.

4

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678. As Evans is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

The Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.");  *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.    DISCUSSION

### A.    Section 1983 Claims

Evans seeks to state a claim against the named Defendants pursuant to 42 U.S.C. § 1983. The Court liberally construes Evans's Complaint as seeking to allege an equal protection claim

pursuant to the Fourteenth Amendment. The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A civil rights action brought [under] section 1983 is sustainable against state actors only." *Boyd v. Pearson*, 346 Fed. App'x 814, 816 (3d Cir. 2009) (citing *Bright v. Westmoreland Cty.*, 380 F.3d 729, 736 (3d Cir. 2004).

Evans does not allege that any of the Defendants is a state actor or acting under color of state law. Whether an individual is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). Because the Defendants are private actors and nothing in the Complaint suggests they may be treated as state actors, Evans's § 1983 claims must be dismissed.

B.      **Statutory Claims**

Evans asserts claims under the ADA and the RA based on the alleged failure of the TJUH

Defendants to provide adequate pain medication.  For the following reasons, these claims are not

plausible and must be dismissed.

1.      **ADA Claims**

Evans asserts a claim under the ADA, but does not identify which section of the statute

provides the basis for his claims.  The Court understands Evans to be asserting a claim under

Title III of the ADA, 42 U.S.C. § 12181, prohibiting discrimination against the disabled, *inter*

*alia*, by a "professional office of a health care provider, hospital, or other service establishment."

42 U.S.C. § 12181(7)(F).  *Hollinger v. Reading Health Sys.*, No. 15-5249, 2017 WL 429804, at

*4, 8 (E.D. Pa., Jan. 31, 2017) (hospital qualifies as place of public accommodation).[7]  "To state

a claim of disability discrimination under Title III of the ADA, a plaintiff must show

(1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of goods,

services, facilities, privileges, advantages or accommodations of any place

of public accommodation; (3) by the public accommodation's owner, lessor or operator."

*Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 642 (E.D. Pa. 2016) (quoting *Harty v.*

*Burlington Coat Factory of Pennsylvania, L.L.C.*, Civ. A. No. 11-01923, 2011 WL 2415169, at

*9 (E.D. Pa. June 16, 2011) (internal citations omitted); *Dempsey v. Pistol Pete's Beef N Beer,*

---

[7] There are four subparts to the ADA.  Title I prohibits discrimination in employment, which is
not implicated here.  Title II "bars disability discrimination in the services, programs, or
activities of a 'public entity,' defined as a state or local government, its agencies or
instrumentalities, and the National Railroad Passenger Corporation or any commuter authority."
*Datto v. Harrison*, 664 F.Supp.2d 472, 486 (E.D. Pa. 2009).  The allegations in the Complaint
suggest that Title II is also not applicable.  Title IV is a catch-all provision that prohibits, *inter*
*alia*, retaliation, coercion and intimidation.  *Id.* at 486-87 (citations  omitted);

*LLC*, Civ. A. No. 08-5454, 2009 WL 3584597, at *3 (D.N.J. Oct. 26, 2009).  Evans alleges that

he is an African-American T12/L1 incomplete paraplegic with neurogenic bowel and bladder.

(Compl.at 2.)  He does not allege whether or how his alleged conditions impact his normal daily

activities.  Moreover, in his Complaint, he merely alleges in conclusory fashion that the

decisions of the named Defendant medical professionals were made based on discrimination.

This is not sufficient to state a plausible Title III claim.

Also, under Title III of the ADA, private plaintiffs may not obtain monetary damages

and therefore only prospective injunctive relief is available.  *Anderson v. Macy's, Inc.*, 943 F.

Supp. 2d 531, 538 (W.D. Pa. 2013) (citing *Reviello v. Phila. Fed. Credit Union,* Civ. A. No. 12-

508, 2012 WL 2196320, at *4 (E.D. Pa. June 14, 2012).  *See also Pavalone v. Preservation*

*Management, Inc.*, No. 18-0191, 2019 WL 1117931, at *6 (M.D. Pa., Jan. 8, 2019 (quoting

*Anderson*, 943 F.Supp.2d at 538 (dismissing *pro se* Title III claim where "the only relief

requested by the plaintiff [was] an award of damages, and they [had] failed to allege any facts

from which [the court] might liberally construe a claim for prospective injunctive relief.")  Evans

requests only compensatory damages in this case, and there are no allegations in his Complaint

from which the Court might construe a claim for prospective injunctive relief, thus his claim is

not plausible.

Additionally, liability under Title III of the ADA is limited to private entities that own,

lease or operate a place of public accommodation, or individuals who own, lease or operate a

place of public accommodation.  *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).

Here, it is not alleged that any of the named Defendants "own, lease or operate a place of public

accommodation," and, therefore, Evans has not stated a plausible Title III claims against them.

Evans will not be granted leave to amend his claims to cure the deficiencies described above because to do so would be futile.  Evans's ADA claims are not plausible for the additional reason that the ADA does not provide a cause of action based on medical treatment decisions. *Hollinger*, 2017 WL 429804, at *9-10 ("As with the ADA, courts consistently hold that § 504 of the RA cannot be construed to provide a cause of action for medical treatment decisions.") (citing *Watson v. A.I. DuPont Hosp.*, No. 05-674, 2007 WL 1009065, at *2 (E.D. Pa., Mar. 30, 2007).  *See also Rosario v. Washington Memorial Hosp.*, No. 12-1799, 2013 WL 2158584, at *5 (W.D. Pa., May 17, 2013) (citing cases).  Accordingly, Evans's ADA claims will be dismissed with prejudice.

### 2.    RA Claims

Evans also asserts a claim under the RA.  To state a plausible claim under the RA, Evans "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019).  The proper Defendant under an RA claim is the entity receiving federal assistance.  *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").  Evans must also allege "intentional discrimination under a deliberate indifference standard because he seeks compensatory damages." *Furgess*, 933 F.3d att 288-89 (citing *H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)).  To allege deliberate indifference, Evans must assert that (1) the defendant had "knowledge that a federally protected right is substantially likely to be violated," and (2) "the [defendant] failed to act despite that knowledge." *Id*. at 292 (internal quotation marks omitted).  To allege that he is a "qualified

9

individual with a disability," Evans must allege that he has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ." 42 U.S.C. § 12102(1)(A).[8]  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  *Id.* at § 12101(2)(A).

Evans does not allege that any of the named Defendants receives federal assistance, and, therefore, has not stated a plausible claim against them.  Additionally, Evans's RA claims suffer from the same deficiencies that his ADA claims do – he does not allege whether or how his alleged disability impacts his daily living, and his conclusory allegations that he was subject to discrimination because of his disability are not sufficient to state a plausible claim.  Moreover, the RA, like the ADA, does not provide a cause of action based on medical treatment decisions.  Accordingly, the Court will dismiss any claims brought under the ADA or the RA with prejudice because amendment of those claims would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

## C.  State Law Claims

Evans asserts state law malpractice claims against the named Defendants.  However, the Court, having dismissed his federal claims, will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over his state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction

---

[8] Due to the "parallel definitions of disability" between the ADA and the RA, Court's use them interchangeably.  *See e.g.*, *Marshall v. Sisters of Holy Fam. of Nazareth*, 399 F. Supp. 2d 597, 607 (E.D. Pa. 2005) (quoting *McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)).

over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship.  *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met).

Evans alleges that he resides in Philadelphia.  (Compl. at 2.)  He provides Pennsylvania addresses for all of the Defendants, which suggests that he and some if not all of the Defendants may be Pennsylvania citizens.  Accordingly, Evans's state law claims will be dismissed for lack of subject matter jurisdiction.  Under the circumstances of this case, the Court concludes that amendment would be futile.  Rather, he may pursue his claims in an appropriate state forum.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant Evans leave to proceed *in forma pauperis*, dismiss his federal claims with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and dismiss his state law claims without prejudice for lack of subject matter jurisdiction.  Leave to amend will not be granted as to do so would be futile. *Grayson*, 293 F.3d at 108, 110.  Evans's motion for extension of time and motion for relief will be denied as moot. An appropriate Order follows.

**BY THE COURT:**

**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, C.J.**